UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---

CATHERINE KRATTENMAKER, derivatively on behalf of CEPHALON, INC.,

    Plaintiff,

-against-

FRANK BALDINO, J. KEVIN BUCHI, WILLIAM P. EGAN, MARTYN D. GREENACRE, GAIL R. WILENSKY, VAUGHN M. KAILIAN, CHARLES A. SANDERS, DENNIS L. WINGER AND KEVIN E. MOLEY,

    Defendants,

  -and-

CEPHALON, INC.,

    Nominal Defendant.

NO. 07-CV-101

---

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Page

Introduction and Procedural Posture ........................................................................................... 1

Argument ...................................................................................................................................... 2

I.     Plaintiff's Failure to Make Demand Upon the Board Cannot Be Excused ....................... 2

       A.     Plaintiff Fails to Establish That the Directors Lack Independence ........................ 4

       B.     Plaintiff Cannot Demonstrate that the Defendants Have a Disqualifying Interest in the Litigation ................................................................................... 5

II.    The Amended Complaint Does Not Even Attempt to Correct Certain Fundamental Defects of the Original Complaint ...................................................................................... 7

       A.     Failure to Define Temporal Scope ......................................................................... 7

       B.     Failure to Allege Injury to the Corporation ........................................................... 8

       C.     Prematurity ............................................................................................................. 9

III.   The Amended Complaint Is Legally Flawed in a Myriad of Other Ways ...................... 10

Conclusion ................................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Abrams v. Koether,
    766 F.Supp. 237 (D.N.J. 1991) ................................................................................1

Amalgamated Bank v. Yost, No. Civ. A. 04- 0972,
    No. Civ. A. 04-0972, 2005 U.S.Dist. LEXIS 1280 (E.D.Pa. Jan. 31, 2005) ..........6

Continuing Creditors' Committee of Star Telecom., Inc. v. Edgecomb,
    385 F.Supp.2d 449 (D. Del. 2004)...........................................................................9

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984)..................................................................................................3

Garr v. U.S. Healthcare, Inc.,
    22 F.3d 1274 (3d Cr. 1994).......................................................................................9

Stafford v. Electronic System & Association, Inc.,
    CIV. A. No. 88-3490, 1988 WL 76033 (E.D.Pa. July 15, 1988)............................1

Yarosh v. Salkind,
    No. Civ.A. 04-1816(JWB), 2005 WL 1459719 (D.N.J. June 21, 2005) ................9

## STATE CASES

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746
    A.2d 244, 253-54 .....................................................................................................3

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) ......................................................................................5

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ........................................................................................9

In re 3COM Corp. S'Holders Litig.,
    No. Civ. A. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999).........................9

In re Caremark International,
    698 A.2d 959 (Del. Ch. 1996)..................................................................................9

Grobow v. Perot,
    539 A.2d 180 (Del. 1988) *overruled on other grounds by Brehm*, 746 A.2d at
    253-54 .......................................................................................................................6

# TABLE OF AUTHORITIES
## (continued)

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003)..................................................................................6

Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins,
    No. Civ. A. 20228-NC, 2004 WL 1949290 (Del. Ch. Aug. 24, 2004)....................9

In re Oracle Derivative Litigation,
    867 A.2d 904 (Del. Ch. 2004), *aff'd* 2005 Del. LEXIS 150 ..................................6

Pogostin v. Rice,
    480 A.2d 619 (Del. 1984), *overruled on other grounds by Brehm*, 746, A.2d at
    253-54 ......................................................................................................................6

Poland v. Caldwell,
    Nos. 89-645, 89-1255, 1990 WL 158479 (E.D.Pa. Oct. 12, 1990) .........................6

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ........................................................................................3

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995)............................................................................3, 4

Stone v. Ritter,
    911 A.2d 362 (Del. 2006) ........................................................................................9

## FEDERAL STATUTES

Fed. R. Civ. P. 9(b) ...............................................................................................................1

Fed. R. Civ. P. 12(c) .............................................................................................................1

Fed. R. Civ. P. 23.1 ...............................................................................................................1

## MISCELLANEOUS

5 James Wm. Moore *et al.*, *Moore's Federal Practice* § 23.1.05 ......................................1

Defendants Frank Baldino, J. Kevin Buchi, William P. Egan, Martyn D. Greenacre, Gail R. Wilensky, Vaughn M. Kailian, Charles A. Sanders, Dennis L. Winger and Kevin E. Moley (collectively, the "Individual Defendants"), and nominal Defendant Cephalon, Inc. ("Cephalon" or the "Company"), in accordance with the Court's Order dated March 15, 2007, submit this Supplemental Memorandum in support of their Motion for Judgment on the Pleadings, pursuant to Federal Rules of Civil Procedure 9(b), 12(c) and 23.1, granting judgment in favor of the defendants and against the plaintiff on the grounds that plaintiff failed to make demand on Cephalon's Board of Directors (the "Board") or state a claim upon which relief can be granted.[1] Defendants incorporate by reference the Memorandum in Support of Motion of Defendants for Judgment on the Pleadings filed with the Court on March 7, 2007 (the "Opening Brief" or "Open Br.").

## Introduction and Procedural Posture

Plaintiff filed her purported Verified Shareholders' Derivative Complaint on or about January 9, 2007 (the "Original Complaint" or "Orig. Compl."). Defendants answered plaintiff's Original Complaint and filed a Motion for Judgment on the Pleadings on March 7, 2007. The motion addressed plaintiff's failure to make a demand on the Board as required by Delaware law or to state a claim upon which relief can be granted. At a pre-trial conference on March 15, 2007, the Court offered plaintiff a last opportunity to allege legally sufficient reasons why demand should be excused in this matter. Plaintiff has failed to do so.

---

[1] Plaintiff also failed to verify the Amended Complaint as required by Federal Rule of Civil Procedure 23.1. Fed. R. Civ. P. 23.1; *Abrams v. Koether*, 766 F. Supp. 237, 258 (D.N.J. 1991); *Stafford v. Electronic Sys. & Ass'n, Inc.*, CIV. A. No. 88-3490, 1988 WL 76033, at *1 (E.D. Pa. July 15, 1988); *see also* 5 James Wm. Moore *et al.*, *Moore's Federal Practice* § 23.1.05 (3d Ed., 2004) ("[T]he verification of an original complaint does not excuse the failure to verify an amended complaint.").

Although plaintiff filed a First Amended Derivative Complaint on March 26, 2007 (the "Amended Complaint" or "Am. Compl."), the eighty-eight additional paragraphs do not even purport to address demand futility — the whole purpose for the opportunity to amend. The Amended Complaint adds much in bulk, but nothing in substance. At the end of the day, plaintiff is no closer than she was at the beginning of this litigation to alleviating the Court's concern over plaintiff's failure to make demand upon the Board. Plaintiff's failure to address the demand futility requirement only underscores what has been true since the beginning of this litigation – there was not and is not any excuse for permitting the plaintiff to evade the clear demand requirement under Delaware law. In addition, plaintiff's effective refusal to engage with respect to the other glaring legal deficiencies of her case makes evident that there has never been a viable legal claim to be considered by anyone. Consequently, the defendants' Motion for Judgment on the Pleadings should be granted and judgment entered against the plaintiff and in favor of the defendants.[2]

## Argument

### I. Plaintiff's Failure to Make Demand Upon the Board Cannot Be Excused

Plaintiff puts forth nothing in either the Original Complaint or the Amended Complaint to excuse her failure to make demand upon the Cephalon Board. This failure dooms her action. As noted in defendants' Opening Brief, litigation on behalf of Cephalon is the domain of the Board and management. *See* Open. Br. at 10-11; *Aronson v. Lewis*, 473 A.2d 805,

---

[2] Consistent with the discussion at the March 15, 2007 conference and with the procedure established by the Court, the Defendants have limited this Supplemental Memorandum to the issue of the lack of demand futility. The purported claims asserted in the Amended Complaint, however, are defective because, among other things, they fail to state legally cognizable claims. The defendants deny in general the bald conclusions set forth in the Amended Complaint and hereby reserve the right to challenge the legal and factual sufficiency of the purported claims.

811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253-54 (Del. 2000); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 542 (1984). Only in the most exceptional of circumstances should a board be divested of the right to determine whether litigation should be initiated on the company's behalf or of the right to control the course of any litigation that is pursued. *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Plaintiff must establish the existence of those exceptional circumstances by setting forth *particularized facts*, not mere conclusions, that the Board is incapable of evaluating a demand. *Id.* at 934. In meeting her burden in this regard, plaintiff, among other things, would have to show that a *majority* of the directors lack independence or are otherwise interested in the matter to disqualify them from objectively determining whether to pursue the litigation. *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995). Plaintiff has completely failed to meet the stringent requirements necessary in order to plead demand futility. Thus, plaintiff has failed to establish her right to bring this action.

    A comparison of the "Demand Futility" section of the Amended Complaint against the same section of the Original Complaint highlights how little plaintiff has actually modified her allegations. *See* Exhibit A to the Declaration of Michael Newman ("Newman Decl."), comparing Demand Futility section of Amended Complaint (¶¶ 135-146) to Demand Futility section of Original Complaint (¶¶ 43-53). What changes plaintiff made are solely stylistic – changes of form, not substance. For example, plaintiff moved some sentences and paragraphs and polished the language of the allegations. However, plaintiff's problems in the Original Complaint went far beyond the cosmetic. Rather, plaintiff's ultimate failure was her inability to plead any facts which would support the assertion that the Cephalon Board lacks the

3

independence and disinterestedness necessary to evaluate a proper demand. No amount of polish can hide that glaring – and fatal – deficiency.

### A. Plaintiff Fails to Establish That the Directors Lack Independence

In the Original Complaint, plaintiff based her claim of lack of independence on the conclusory allegations that 1) Dr. Baldino, as Chairman of the Board and CEO of Cephalon, controlled the entire board; 2) the friendships and business relationships of defendants Baldino, Greenacre and Kailian rendered them incapable of exercising independent judgment; and 3) defendant Moley was beholden to the other directors for his board appointment. (Orig. Compl. ¶ 51a-c.) Defendants disposed of these allegations in the Opening Brief by showing that such conclusory allegations lack the particularized supporting facts required under Delaware law and, therefore, are insufficient to establish that defendants are dependent, beholden or otherwise incapable of basing a decision on the "corporate merits." Open. Br. at 12; *Seminaris*, 662 A.2d at 1355.

Plaintiff does not even attempt to add anything regarding director independence to the Amended Complaint. In fact, plaintiff has now *dropped* the allegations regarding director independence. (Am. Compl. ¶¶ 135-46.) The Amended Complaint no longer makes any reference to Dr. Baldino's alleged control of the board; the friendships and business relationships among Baldino, Greenacre and Kailian; or Mr. Moley's appointment to the Board. The only "support" now offered to substantiate director dependence is found in the generic statements that

> b. [c]ertain of the known principal wrongdoers and beneficiaries of the wrongdoing complained of herein are in a position to, and do, control the day to day operations of the Company and have significant influence over the Board and the flow of information to the Board of Directors of the Company. . . .

       c.    [T]he members of the Board of Directors would have been required to sue themselves and/or their fellow directors and allies in the top ranks of the Company, who are their good friends and with whom they have entangling financial alliances, interests, and dependencies, which they would not and will not do. . . .

(Am. Compl. ¶142b-c.) The Amended Complaint does not identify the "principal wrongdoers," the "beneficiaries," or how these actors would have "significant influence over the Board." Nor does the Amended Complaint identify any friendships or "entangling financial alliances." Without these key required facts, neither defendants nor the Court can determine which directors are subject to these claims or whether a majority of the Board remains independent to evaluate a demand. In sum, these allegations fall far short of the "particularized facts" necessary to establish lack of independence and excuse demand on the Board. *Beam v. Stewart*, 845 A.2d 1040, 1050-52 (Del. 2004) (When a court questions the independence of directors, it must ask "independent from whom and independent for what purpose?").

    **B.**    **Plaintiff Cannot Demonstrate that the Defendants Have a Disqualifying Interest in the Litigation**

    Similarly, plaintiff's Amended Complaint adds nothing to the interest prong of the demand futility analysis. In order to excuse her failure to make demand and survive dismissal, plaintiff must show in the Amended Complaint that a majority of the Board possessed a disabling interest rendering them incapable of fairly evaluating a demand. Plaintiff is unable to do so.

    To satisfy the interest prong of the demand futility analysis, plaintiff rests on: 1) the allegations of the Original Complaint that the financial incentives customarily offered to directors for board service create a conflicting interest and 2) the "discredited refrain" that directors cannot be expected to sue themselves. (Am. Compl. ¶¶ 139-143.) Yet, if such

5

allegations were sufficient, the demand requirement would be meaningless because financial compensation and incentives are routinely given to corporate directors. *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) *overruled on other grounds by Brehm*, 746 A.2d at 253-54; *Poland v. Caldwell*, Nos. 89-645, 89-1255, 1990 WL 158479, at *4 (E.D. Pa. Oct. 12, 1990). Likewise, the demand requirement would be of little import if a plaintiff could circumvent it simply by naming all directors as defendants. *Pogostin v. Rice*, 480 A.2d 619, 625 (Del. 1984), *overruled on other grounds by Brehm*, 746, A.2d at 253-54; *see also* Open. Br. at 16-19.

    Plaintiff again tries in her Amended Complaint to make much of alleged insider stock sales. However, as discussed more fully in the Opening Brief, (31-33), plaintiff offers nothing more than the fact that sales occurred as "evidence" of "improper" sales, and this is legally insufficient. Plaintiff still neglects to state what specific information allegedly motivated the trades, *In re Oracle Derivative Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004), *aff'd* 2005 Del. LEXIS 150 (Del. April 14, 2005), how these stock sales differed from other stock sales made by the defendants, *Guttman v. Huang*, 823 A.2d 492, 503-04 (Del. Ch. 2003), or how the questioned sales relate to the defendants' total stock holdings, *Amalgamated Bank v. Yost*, No. Civ. A. 04-0972, 2005 U.S. Dist. LEXIS 1280, at *11 (E.D. Pa. Jan. 31, 2005). Moreover, even if the identified stock sales of Baldino, Egan, and Greenacre rendered them "interested," that does not implicate the remaining five members of the Board, who constitute a majority fully capable of evaluating a demand.[3]

---

[3] Plaintiff alleges that defendant Buchi also engaged in insider stock sales. (Am. Compl. ¶144a.) Plaintiff identifies Buchi as a director and asserts that demand must be excused because he, along with Baldino, Egan and Greenacre, is conflicted as a result of the sales. (*Id.*) As plaintiff is well aware, Buchi is not a director. (*Id.* ¶ 10.) This is not just a mistake; rather, it is a disingenuous attempt to manufacture an "interested" Board.

Because the plaintiff did not deal with the absolute lack of any basis to bypass the demand requirement, she chose instead to pad her Amended Complaint. However, the purported facts plaintiff adds to the Amended Complaint are nothing more than bald statements and legal conclusions plucked from various mundane documents: packaging inserts; product labels; several Cephalon internal guidelines, codes and operating procedures; SEC filings; court filings in unrelated employment and patent litigations; various news reports and internet blogs. Indeed, approximately half of the eighty-eight additional paragraphs consist almost entirely of block quotes from these sorts of sources. Many of them relate information about a particular product (*e.g.*, ¶¶ 22-26, 34); information for directors and employees (*e.g.*, ¶¶ 39-41, 43, 45, 87); or about disclosures made in Cephalon's SEC filings (*e.g.*, ¶¶ 46-47, 104-112). However, what remains missing from the Amended Complaint are the essential particularized facts necessary to justify the claim of demand futility. What plaintiff has offered up on her second try is simply insufficient to strip the Board of its right to evaluate a demand and decide what is in the best interests of the corporation.

## II.     The Amended Complaint Does Not Even Attempt to Correct Certain Fundamental Defects of the Original Complaint

In their Opening Brief, defendants identified numerous legal and factual defects in plaintiff's claims. (Open. Br. at 19-34.) While the Amended Complaint purports to remedy the standing defect, it fails to even address the remaining threshold defects and legal shortcomings. For this additional reason, judgment should be entered in favor of the defendants and against the plaintiff.

### A.     Failure to Define Temporal Scope

Plaintiff has yet to define what is meant by "relevant period" even though the term appears throughout the Amended Complaint. As noted in the Opening Brief, (20-21), this

7

shortcoming prevents defendants from making certain key assessments including: whether plaintiff was in fact a shareholder throughout the necessary period; when the alleged wrongdoing purportedly occurred; who served on the board at the relevant times and who are appropriate defendants (to the extent that there are any appropriate defendants). Plaintiff's obfuscation in this regard blocks the defendants from effective notice of the claims against them.

### B.     Failure to Allege Injury to the Corporation

Plaintiff's Amended Complaint does nothing to establish that Cephalon suffered any cognizable harm. In an attempt to remedy this failure, plaintiff adds a section addressing harm under the heading "Damage, Loss of Good Will and Harm to the Company." (Am. Compl. p. 63.) However, the sheer act of labeling something "harm" does not make it so. The only new allegation of injury introduced by the Amended Complaint is the conclusory assertion of harm related to certain patent litigation settlements. (Am. Compl. ¶¶ 128-34.) *See generally* Open. Br. pp. 21-22 (discussing plaintiff's failure to allege injury to Cephalon). Plaintiff asserts that certain payments made as part of agreements to settle patent litigation with other pharmaceutical companies are "nothing more than disguised non-compete agreements." (Am. Compl. ¶ 128.) Not surprisingly, the only support for this accusation comes from conclusory, self-serving charges asserted in an unrelated private anti-trust complaint against Cephalon.[4] (Am. Compl. ¶¶ 81 *et seq.*) Such a conclusory allegation of damage cannot save plaintiff's claims. First,

---

[4] Plaintiff treads dangerous waters by relying on the complaint in an unrelated litigation as the factual basis for her allegations regarding the patent litigation settlements. Plaintiff did not verify the Amended Complaint. *See Yarosh v. Salkind*, No. Civ.A. 04-1816(JWB), 2005 WL 1459719, at *3 (D.N.J. June 21, 2005) ("The purpose of the [verification] rule is to ensure that a derivative action has a basis in fact, and is not a strike suit.") There is no other indication that plaintiff or her attorneys made any inquiry into the patent settlements beyond reviewing the assertions in the shareholder complaint. In *Garr v. U.S. Healthcare, Inc.*, the Third Circuit imposed Rule 11 sanctions upon two attorneys who filed complaints based only on their reliance on the work of an attorney in a companion case and on their review of a *Wall Street Journal* article and the complaint in the companion case. 22 F.3d 1274, 1280 (3d Cir. 1994). It appears that the plaintiff here made even less of an inquiry, relying solely on the allegation in an unrelated complaint.

allegations of harm are a necessary, *but not sufficient*, requirement for bringing a claim. *See, e.g, Stone v. Ritter*, 911 A.2d 362, 366, 371 (Del. 2006). Plaintiff must tie the alleged harm to something defendants did or, in the case of a *Caremark* claim, did not do. Open. Br. at 23-28 (discussing plaintiff's failure to adequately plead a *Caremark* claim). Plaintiff fails to do so. To the extent that the settlement payments were approved by the Board, the directors' decision approving them, even if "stupid" or "irrational," is entitled to the protection afforded by the business judgment rule. *In re Caremark Int'l*, 698 A.2d 959, 967-68 (Del. Ch. 1996). To the extent that plaintiff is claiming the payments did not result from Board action, but from a failure of oversight, plaintiff fails to provide the specific facts necessary to show that defendants knew or should have known that violations were occurring; that defendants did nothing to "remedy that situation;" and that this failure "proximately resulted" in the loss. *Id.* at 971.[5]

### C. Prematurity

The Amended Complaint only highlights the fact that this action, to the extent that there is any basis for one, is premature. Plaintiff states that defendants' actions have "subjected Cephalon to . . . several *expected* multi-million dollar fines, penalties and settlement costs that

---

[5] To the extent that plaintiff characterizes the settlement payments and compensation paid to defendants as "waste of corporate assets," Count III, her claim likewise fails. The pleading standard for corporate waste is "stringent" and "rarely satisfied." *See, e.g., Continuing Creditors' Comm. of Star Telecom., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 464 (D. Del. 2004) ("[T]he Delaware standard for pleading corporate waste is stringent ... ."); *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. Civ. A. 20228-NC, 2004 WL 1949290, at *17 (Del. Ch. Aug. 24, 2004) ("Waste is a standard rarely satisfied in Delaware courts."). In order to satisfy the heightened pleading standard, a plaintiff must allege that the transaction in question lacked either consideration or corporate purpose. *See Elkins*, 2004 WL 1949290, at *17; *see also Brehm v. Eisner*, 746 A.2d 244, 263-64 (equating the test for waste as the "functional equivalent" of a test for "irrationality"). Plaintiff cannot satisfy this test.

In any event, the Amended Complaint fails to explain how or why such settlement payments and compensation lacked consideration or any corporate purpose. *See, e.g., In re 3COM Corp. S'holders Litig.*, No. Civ. A. 16721, 1999 WL 1009210, at *5 (Del. Ch. Oct. 25, 1999) (granting motion to dismiss waste claim where plaintiff failed to allege facts indicating why the company did not benefit from compensation given to directors and stating that "[b]are allegations" of excessive compensation "are insufficient as a matter of law to meet the standard required for a claim of waste").

will *foreseeably* be levied against the Company" in addition to "millions of dollars in personal injury suits that are also *foreseeable* . . . . " (Am. Compl. ¶128 (emphasis added).) Plaintiff forecasts these "foreseeable" losses despite that fact that no actions, either civil or criminal, have been instituted against Cephalon. This is, yet again, an independently sufficient basis to enter judgment against the plaintiff. *See also* Open. Br. at 22-27. And, even if such an action were ever filed against Cephalon, such filing would not be proof of actionable harm. (Open. Br. at 22-27.)

### III. The Amended Complaint Is Legally Flawed in a Myriad of Other Ways

Even if plaintiff could get past all the defects described above, the Amended Complaint is riddled with a myriad of other problems that bar plaintiff's claims against the defendants as a matter of law. Pursuant to the procedure established by the Court at the March 15, 2007 Conference and in the subsequent Order, defendants have limited this Supplemental Memorandum to the issue of plaintiff's unexcused failure to make demand on the Board. Defendants deny in general the bald conclusions set forth in the Amended Complaint and reserve the right to challenge the legal and factual sufficiency of the Amended Complaint to the extent not already done in the Opening Brief.

### CONCLUSION

Plaintiff was given an opportunity to replead the grounds on which the Court should excuse demand. Despite this opportunity, plaintiff has failed to establish demand futility. Plaintiff does not identify a single fact that would prevent the directors from fairly and objectively considering a demand. What plaintiff did do was merely cull numerous statements from a variety of sources, including statements that pre- or pro-scribe certain conduct. *See, e.g.,* Am. Compl. ¶ 41 (describing the *Standards of Business Conduct* requirement of compliance with

drug laws). Plaintiff hoped, then, that the Court would overlook the utter lack of any facts linking this cautionary information to anything to do with demand futility.

For the reasons set forth above and in defendants' Opening Brief, Judgment should be entered in favor of the defendants and against the plaintiff.

Dated: Philadelphia, PA
April 5, 2007

Respectfully submitted,

/s/ MLK6620
Steven B. Feirson
Michael L. Kichline
Michael J. Newman
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
215.994.4000

*Attorneys for the Defendants*
*Frank Baldino, J. Kevin Buchi, William P. Egan, Martyn D. Greenacre, Gail R. Wilensky, Vaughn M. Kailian, Charles A. Sanders, Dennis L. Winger, Kevin E. Moley, and Cephalon, Inc.*